UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-05219 JAK (RAOx) | Date | August 1, 2019 |
| Title | Jose Rodriguez v. Wal-Mart Stores, Inc., et al. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |

| Andrea Keifer | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**     **(IN CHAMBERS) ORDER RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFF (DKT. 36)**

**PLAINTIFF'S REQUEST TO ACCEPT LATE FILING OF OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (DKT. 47)**

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. 74)**

**PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANT (DKT. 80)**

## I.     Introduction

On February 28, 2017, Jose Rodriguez ("Plaintiff") brought this action in the Ventura Superior Court against Wal-Mart Stores, Inc. ("Wal-Mart" or "Defendant") and Does 1-50.[1] The Complaint advances five causes of action: (i) disability discrimination; (ii) failure to provide reasonable accommodation; (iii) failure to engage in good faith interactive process; (iv) retaliation; and (v) wrongful termination in violation of public policy. Dkt. 1-1. The first four causes of action are brought pursuant to the California Fair Employment and Housing Act ("FEHA"). *Id.* On July 14, 2017, Wal-Mart removed the action on the basis of diversity jurisdiction. Dkt. 1.

Non-expert discovery closed on June 27, 2018, although the parties were permitted to conduct four depositions in July and August 2018. Dkts. 30, 34. Expert discovery closed on September 7, 2018, which also was the deadline for filing of all motions. Dkt. 34.

On September 7, 2018, Wal-Mart filed a motion for summary judgment (the "Motion for Summary Judgment"). Dkts. 36-44. On December 3, 2018, Plaintiff filed an opposition to the Motion for Summary Judgment. Dkts. 48-56.[2] Wal-Mart filed a reply. Dkts. 57-60.[3] On January 7, 2019, a hearing was held on

---

[1] On July 18, 2017, an Order issued that dismissed Does 11-50 pursuant to Local Rule 19-1. Dkt. 9.

[2] Plaintiff did not file a timely opposition to the Motion for Summary Judgment. Consequently, an Order issued that directed Plaintiff to file any opposition, and a request that the late filing be accepted, on or before December 3, 2018. Dkt. 46. Plaintiff filed the Request (Dkt. 47) and the Opposition (Dkts. 48-52) by that deadline. A review of the Request showed that the late filing was due to excusable neglect. Plaintiff's counsel erred by considering the wrong

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-05219 JAK (RAOx) | | Date | August 1, 2019 |
|---|---|---|---|---|
| Title | Jose Rodriguez v. Wal-Mart Stores, Inc., et al. | | | |

the Motion for Summary Judgment. Dkt. 61.

Certain issues were raised with respect to the admissibility of the declaration submitted by Plaintiff with his opposition to the Motion for Summary Judgment, and a limited deposition of Plaintiff and supplemental briefing on the matter were ordered. *Id.* Plaintiff was also permitted to file an updated declaration that addressed the procedural defects in the initial one, although a determination was reserved as to whether either or both of the declarations would be accepted or considered in connection with the Motion for Summary Judgment. *Id.* On January 22, 2019, Plaintiff filed his updated declaration, which was the same as the prior one in all relevant, substantive respects. Dkt. 62.[4] The supplemental briefing was then completed on February 22, 2019, and the Motion for Summary Judgment was taken under submission. Dkts. 66-73.

On March 14, 2019, Defendant filed a "Suggestion as to Lack of Jurisdiction Pursuant to Fed. R. Civ. P. 12(h)(3) and Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c)" (the "Jurisdictional Motion"). Dkt. 74. In support of this motion, Defendant argues that the declaration of Plaintiff "is an obvious sham and should be disregarded," but that, if it is allowed and considered, it "dooms Plaintiff's case" because it "presents new 'facts'" that show that his claims are time-barred. *Id.* at 2. Plaintiff filed an opposition to the Jurisdictional Motion, and Defendant filed a reply. Dkts. 76, 79.

On April 19, 2019, Plaintiff filed a motion for sanctions pursuant to Fed. R. Civ. P. 11 (the "Motion for

---

set of rules governing deadlines. There has been no showing that Defendant was prejudiced by the delay. Accordingly, the Request is **GRANTED**, and Plaintiff's opposition has been considered in connection with the Motion for Summary Judgment.

[3] Plaintiff and Defendant each filed evidentiary objections in connection with the Motion for Summary Judgment. Dkts. 53-56, 59. Defendant also filed evidentiary objections in connection with Plaintiff's updated declaration, during the course of supplemental briefing on the Motion for Summary Judgment. Dkt. 68. Most of those objections are addressed in separate orders. Because this Order does not reference any material from the declaration of Chris Callow, however, the corresponding objections (Dkt. 53) are **MOOT** at this stage, and no order on the line-by-line objections will issue.

[4] Defendant argues that neither version of Plaintiff's declaration should be considered. Dkt. 66. It contends that each is a sham declaration that conflicts with Plaintiff's prior deposition testimony. *Id.* at 2, 4-8. Defendant also emphasizes several serious procedural defects in Plaintiff's initial declaration, including that it was not translated for his review prior to filing and that it was not signed by Plaintiff. *Id.* at 2-3. Defendant also notes that Plaintiff's updated declaration presents additional procedural problems, in that is it untimely and follows a series of other failures to adhere to deadlines. *Id.* at 3-4. Plaintiff responds that the declarations do not contradict his prior testimony and that, to the extent there were procedural issues with the initial declaration, they were cured in the updated declaration. Dkt. 71. In light of the serious procedural defects in Plaintiff's initial declaration, Defendant's objection (Dkt. 59) to admission of the initial declaration is **SUSTAINED**. Accordingly, Plaintiff's initial declaration has not been considered in connection the Motion for Summary Judgment. However, Plaintiff's updated declaration addresses the most serious procedural defects in the initial one. Moreover, because the updated declaration is substantively the same as the initial one -- which was filed in connection with Plaintiff's opposition to the Motion for Summary Judgment, thereby providing sufficient time for Defendant to respond -- the delay in filing of the updated declaration did not impose undue prejudice that would warrant its exclusion. Finally, Defendant has not shown that the updated declaration should be stricken or disregarded because it should be deemed a sham declaration. Although there were certain gaps in Plaintiff's deposition testimony, and there are some inconsistencies between that testimony and the statements in the declaration, they are not sufficiently clear or pervasive to conclude that the declaration is a sham. However, this is not a determination as to the merits of Defendant's more specific objections (Dkt. 68), which are addressed in a separate order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-05219 JAK (RAOx) | Date | August 1, 2019 |
|---|---|---|---|
| Title | Jose Rodriguez v. Wal-Mart Stores, Inc., et al. | | |

Sanctions"), in which he contends that the Jurisdictional Motion filed by Defendant is frivolous. Dkt. 80. Defendant filed an opposition, and Plaintiff filed a reply. Dkts. 82, 83. A hearing was held on the Jurisdictional Motion and the Motion for Sanctions on May 20, 2019, and the matters were taken under submission. Dkt. 84.

For the reasons stated in this Order, the Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**, and the Jurisdictional Motion and the Motion for Sanctions are **DENIED**.

## II.   Factual Background

A.   Plaintiff's Positions and Duties at Wal-Mart

In the summer of 2011, Plaintiff was hired by Wal-Mart to work as a Maintenance Associate in one of its California store locations. Ex. A to Declaration of Andrew Haeffele ("Haeffele Decl"), Dkt. 40-1; Declaration of Jose Rodriguez ("Rodriguez Decl."), Dkt. 62 ¶ 4; Ex. A to Rodriguez Decl., Dkt. 62-1. In the summer of 2012, Plaintiff was promoted to the position of Sales Associate in Wal-Mart's grocery department. Ex. C to Haeffele Decl., Dkt. 40-3; Rodriguez Decl., Dkt. 62 ¶ 6; Ex. C to Rodriguez Decl., Dkt. 62-3. In July 2013, Plaintiff was promoted to the position of Department Manager of the Fresh Grocery Department ("Fresh Manager"). Ex. D to Haeffele Decl., Dkt. 40-4; Rodriguez Decl., Dkt. 62 ¶ 8; Ex. E to Rodriguez Decl., Dkt. 62-5.

As Fresh Manager, Plaintiff was responsible for managing and overseeing the work of a small staff of Sales Associates in the Fresh Grocery Department. Deposition Transcript of Jose Rodriguez ("Rodriguez Depo. Tr."), Dkt. 40-1[5] at 32:2-4. At all relevant times, the Grocery Department, which included five aisles, contained baked goods, produce, meat, deli and frozen foods. Declaration of Renee Martin ("Martin Decl."), Dkt. 39 ¶ 5. Bakery items were displayed on small, movable, gondola-style racks, with one for bread and one for pastries. *Id.* Meat items were displayed in a single four-shelf open display case. *Id.*; Ex. A to Martin Decl., Dkt. 39-1. Produce items were displayed in a single five-shelf open display case. Martin Decl., Dkt. 39 ¶ 5; Ex. B to Martin Decl, Dkt. 39-2. Deli items were displayed in six-shelf closed-door refrigerators. Martin Decl., Dkt. 39 ¶ 5; Ex. C to Martin Decl, Dkt. 39-3. Frozen foods were displayed in six-shelf closed-door freezers. Martin Decl., Dkt. 39 ¶ 5; Ex. D to Martin Decl, Dkt. 39-4.

The job duties of the Fresh Manager included food rotation, culling, price changes, code dating, visual walkthroughs, zoning, inventory and customer service. *Id.* ¶ 7; Rodriguez Depo. Tr. at 31:9-35:17. These duties are as follows:

- Food rotation entailed "ensur[ing] that the 'first in, first out' guideline was followed when adding or replacing products," *i.e.*, "that new product be placed in the back, and older (closer to expiring) product be moved to the front." Martin Decl., Dkt. 39 ¶ 8.
- Culling entailed "inspect[ing] products for mold, bruises, other imperfections, and CVP labels," and deciding which items should be removed from the shelf "using the 'WIBI Guide' (Would I Buy It)." *Id.* ¶ 10.

---

[5] Plaintiff and Defendant each supplied different pages from Plaintiff's deposition. Those pages not found at Dkt. 40-1 are located at Dkt. 52-1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-05219 JAK (RAOx) | Date | August 1, 2019 |
|---|---|---|---|
| Title | Jose Rodriguez v. Wal-Mart Stores, Inc., et al. | | |

- Price changes entailed "review[ing] whether any products in the Fresh Department had been designated for 'price change' by Wal-Mart's Home Office," using a handheld computing and scanning device called a "Gemini." *Id.* ¶ 12. For that task, "[t]he Fresh Manager was expected to walk through the Fresh Department with the Gemini, print new (accurate) yellow price label-stickers, and place them over the old (inaccurate) yellow price-stickers on the shelfs." *Id.* ¶ 13.
- Code dating entailed "walk[ing] through the Fresh Department and review the 'sell-by date' stickers on the perishable items," both (i) "to ensure that expired or 'out-of-code' items were not being offered for sale"; and (ii) "to perform proper Customer Value Program Markdowns ('CVP')" for products with sell-by dates approaching. *Id.* ¶ 15. CVP labels were printed using a Gemini, and the CVP label would be placed next to the product label. *Id.* ¶ 16.
- Visual walkthroughs "involved walking through each area of the Fresh Department to ensure that the Department was properly prepared for the day." *Id.* ¶ 20.
- Zoning "involved walking through each area of the Fresh Department and ensuring that products in the Fresh Department were forward facing, in the correct place, and otherwise visually appealing." *Id.* ¶ 21.
- Inventory "involved reviewing the in-stock levels of goods sold in the Fresh Department, and confirming that the levels matched the amounts listed in Wal-Mart's inventory management system." *Id.* ¶ 22.

The Fresh Manager was responsible for ensuring that this work was timely and properly competed, whether by him personally or by the Sales Associates who reported to him. *Id.* ¶¶ 7-22. However, it was Plaintiff's understanding that he could not delegate "Gemini work" to a Sales Associate. Rodriguez Decl., Dkt. 62 ¶¶ 9-11. Plaintiff declares that, as a Fresh Manager, he was also "responsible for making sure the department was stocked with merchandise" and "bringing in merchandise from the stockroom." *Id.* ¶ 9; *see also* Rodriguez Depo. Tr. at 32:19-33:17.

B.     Plaintiff's Injury and Wal-Mart's Response

On April 1, 2014, Plaintiff had an accident while at work. Rodriguez Decl., Dkt. 62 ¶ 15; Exs. E, F to Haeffele Decl., Dkts. 40-5, 40-6. That day, an Assistant Store Manager with Wal-Mart drove Plaintiff to a medical center to be evaluated by a doctor. Rodriguez Depo. Tr. 38:17-39:2, 39:19-40:3, 42:4-8, 41:5-24; Ex. H to Haeffele Decl., Dkt. 40-8. Plaintiff was evaluated by Dr. Larry Baker and diagnosed with an injury to his left arm/shoulder. *Id.*; *see also* Rodriguez Decl., Dkt. 62 ¶ 16. For the next year, Plaintiff visited doctors regularly for evaluation and treatment of his injury, and they placed him on a series of work restrictions. Rodriguez Decl., Dkt. 62 ¶ 16; Ex. G to Rodriguez Decl., Dkt. 62-7. Initially, he was placed off work for one to two days. *Id.* Thereafter, he was permitted to return work but with certain restrictions. *Id.*

After his visits with the treating doctors, Plaintiff would notify Wal-Mart about the work restrictions the doctors had imposed. Rodriguez Decl., Dkt. 62 ¶ 17. Wal-Mart had a policy to review such work restrictions and, where possible, provide a Temporary Alternative Duty ("TAD") assignment to accommodate the employee, *i.e.*, an assignment that could be performed consistent with those restrictions. Deposition Transcript of Todd Stokes ("Stokes Depo. Tr."), Dkt. 42-6 at 25:10-26:21; Declaration of Todd Stokes ("Stokes Decl."), Dkt. 41 ¶¶ 6, 12-13. Certain "job aides" were also available to support employees with physical restrictions, including step stools, step ladders and rolling carts. Stokes Decl., Dkt. 41 ¶ 7; Deposition Transcript of Jose Sanchez ("Sanchez Depo. Tr."), Dkt. 42-7 at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-05219 JAK (RAOx) | Date | August 1, 2019 |
|----------|--------------------------|------|----------------|
| Title | Jose Rodriguez v. Wal-Mart Stores, Inc., et al. | | |

56:20-57:2, 59:24-60:12, 83:16-84:23; Deposition Transcript of Renee Martin, Volume II ("Martin Depo. Tr., Vol. II"), Dkt. 42-1[6] at 129:5-15, 207:19-208:8, 373:5-23, 374:16-25, 376:17-377:2.

On April 3, 2014, Plaintiff was evaluated by Dr. Larry Baker, who had also done so previously. Based on this examination, Dr. Baker directed that Plaintiff could continue to work, but with the following restrictions: no lifting over five pounds; no repetitive reaching, stooping, twisting, squatting, kneeling; sit down work; and no overhead work. Ex. I to Haeffele Decl., Dkt. 40-9. In light of Plaintiff's restrictions, Wal-Mart offered Plaintiff a light duty/sit down work assignment:

> We have a temporary position available for you that will accommodate the restrictions under which the physician has authorized you to return to work. The position being offered to you will include (but is not limited to) the following duties:
>
> Complete your computer-based training, perform hazmat operations, other duties as assigned making sure you work within your restrictions.
>
> Be assured we will only assign tasks consistent with your physical abilities, knowledge and skills and will provide training if necessary.

Ex. J to Haeffele Decl., Dkt. 40-10. Plaintiff signed the form and accepted the TAD assignment. *Id.*

On April 17, 2014, Plaintiff was evaluated again by Dr. Larry Baker, who adopted the following updated restrictions as to Plaintiff's work: no lifting over two pounds; no repetitive reaching; must wear sling; and sit down work only. Ex. L to Haeffele Decl., Dkt. 40-12. Later that day, Wal-Mart Training Coordinator Cindy Dobbs ("Dobbs") sent the following email update regarding those restrictions to Store Manager Alejandro Olguin ("Olguin") and Assistant Store Managers Renee Martin ("Martin"), Christen Haaland and Rachel Gomez (collectively, the "Management Team"):

> Attention Management,
>
> Jose Rodriguez is still on light duty, his condition was marked by the Dr. (Not improved significantly) with the following:
>
> No lifting over 2 pounds
> No repetitive reaching
> Must wear sling
> Sit down work only.
>
> Next follow up visit is on 4/23.
>
> Thank you!

Martin Decl., Dkt. 39 ¶ 24; Ex. H to Martin Decl., Dkt. 39-8.

---

[6] Plaintiff and Defendant each supplied different pages from the second volume of Martin's deposition. Those pages not found at Dkt. 42-1 are located at Dkt. 52-3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-05219 JAK (RAOx) | Date | August 1, 2019 |
|---|---|---|---|
| Title | Jose Rodriguez v. Wal-Mart Stores, Inc., et al. | | |

On May 7, 2014, Dr. Larry Baker evaluated Plaintiff again and then placed him on the following updated restrictions: no lifting over five pounds; no repetitive reaching; and no overhead reaching. Ex. N to Haeffele Decl., Dkt. 40-14. (Haeffele Decl.. at Exh. "N"). Later that day, Dobbs sent the following email update regarding those restrictions to the Management Team:

> Attention Management,
>
> The following associate [is] continuing to be placed on light duty with the following restrictions:
>
> No lifting over 5 pounds
> No repetitive reaching
> No overhead reaching
>
> Next apt is on 5/23
>
> Thank you for making sure this associate is working within his restrictions.

Martin Decl., Dkt. 39 ¶ 25; Ex. I to Martin Decl., Dkt. 39-9.

On May 23, 2014, Dr. Larry Baker evaluated Plaintiff again and then placed him on the following updated restrictions: no lifting over ten pounds; no repetitive reaching; no overhead reaching. Ex. O to Haeffele Decl., Dkt. 40-15. In light of the change in his restrictions, Plaintiff was assigned to resume certain Fresh Manager duties. Martin Decl., Dkt. ¶ 26; *see* also Rodriguez Decl., Dkt. 62 ¶ 22.

On June 2, 2014, Dr. Larry Baker evaluated Plaintiff again and then placed him on the following updated restrictions: no lifting over 15 pounds; no repetitive reaching; and no overhead work. Ex. P to Haeffele Decl., Dkt. 40-16. Later that day, Dobbs sent the following email update regarding those restrictions to the Management Team:

> Attention Management,
>
> Jose Rodriguez is continuing medical treatment with the following restrictions:
>
> No lifting over 15 pounds
>
> No repetitive reaching
> No overhead reaching
>
> Jose's follow up appointment is on 6/20/2014, his condition is improved but slower than expected.
>
> Thank you!

Martin Decl., Dkt. 39 ¶ 27; Ex. J to Martin Decl., Dkt. 39-10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-05219 JAK (RAOx) | Date | August 1, 2019 |
|---|---|---|---|
| Title | Jose Rodriguez v. Wal-Mart Stores, Inc., et al. | | |

On July 14, 2014, Dr. Larry Baker evaluated Plaintiff again and then placed him on the following updated restrictions: no lifting over 15 pounds; no repetitive reaching; and no overhead work. Ex. S to Haeffele Decl., Dkt. 40-19. Later that day, Dobbs sent the following email update regarding those restrictions to the Management Team:

> Attention Management,
>
> Jose is still on light duty with the following restrictions as directed below. The Dr. said that he is not improving significantly, his follow up apt is on 8/5/14.
>
> No lifting over 15 pounds
> No repetitive reaching
> No overhead work
>
> Thank you in advance for making sure this associate is working within his restrictions.

Martin Decl., Dkt. 39 ¶ 28; Ex. K to Martin Decl., Dkt. 39-11.

In light of his restrictions, Wal-Mart again offered Plaintiff a TAD assignment:

> We have a temporary position available for you that will accommodate the restrictions under which the physician has authorized you to return to work. The position being offered to you will include (but is not limited to) the following duties:
>
> Your Department Manager duties ensuring that you follow the above work restrictions.
>
> Be assured we will only assign tasks consistent with your physical abilities, knowledge and skills and will provide training if necessary.

Ex. L to Martin Decl., Dkt. 39-12. Plaintiff signed the form and accepted the TAD assignment. *Id.*

On September 25, 2014, Personnel Coordinator Lee Smith ("Smith") informed Plaintiff that his doctors were trying to reach Plaintiff. Declaration of Lee Smith ("Smith Decl"), Dkt. 38 ¶ 11; Ex. B to Smith Decl., Dkt. 38-2. Plaintiff told Smith that he would schedule an appointment soon. *Id.* When Plaintiff did not follow up, Smith and Assistant Manager Brianna Johnson scheduled a meeting with Plaintiff. Smith Decl., Dkt. 38 ¶ 14. They met in November 2014. *Id.* Smith memorialized the meeting in an email that stated, in relevant part:

> I asked Jose if he had been back to the doctor, he said no he hadn't. I referred to our other conversations, and reminded him that York had been trying to reach him, but had been unsuccessful. . . .
>
> I told him, that per Home Office, we were putting him on a Leave of Absence immediately, until such time as we received current restrictions, if any. I reiterated that he was able to visit the local Med Center for an exam, and that would allow us to have current restrictions, if any. I told him that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-05219 JAK (RAOx) | Date | August 1, 2019 |
|---|---|---|---|
| Title | Jose Rodriguez v. Wal-Mart Stores, Inc., et al. | | |

once we received a new doctors report, he would be able to come back and work.

*Id.*; Ex. E to Smith Decl., Dkt. 38-5.

On November 26, 2014, Plaintiff was evaluated by Dr. Brian Schare and then placed on the following restrictions: no lifting over 15 pounds; and no overhead work. Ex. W to Haeffele Decl., Dkt. 40-23. In light of Plaintiff's restrictions, Wal-Mart again offered Plaintiff a TAD assignment:

> We have a temporary position available for you that will accommodate the restrictions under which the physician has authorized you to return to work. The position being offered to you will include (but is not limited to) the following duties:
>
> Gemini work, light stocking under 15 pounds, zoning, customer service.
>
> Be assured we will only assign tasks consistent with your physical abilities, knowledge and skills and will provide training if necessary.

Ex. X to Haeffele Decl., Dkt. 40-24.

On January 15, 2015, Plaintiff was evaluated by Dr. Mark Getelman. Ex. DD to Haeffele Decl., Dkt. 40-30. Plaintiff's resulting, updated restrictions were stated in a Wal-Mart form as follows: "No lifting over 16 pounds (left arm), no forceful pushing/pulling, no work at/above shoulder level w/ involved arm." *Id.* In light of Plaintiff's restrictions, Wal-Mart again offered Plaintiff a TAD assignment:

> We have a temporary position available for you that will accommodate the restrictions under which the physician has authorized you to return to work. The position being offered to you will include (but is not limited to) the following duties:
>
> Consumables sales associate, making certain to maintain the restrictions noted above, no overhead work w/ left arm, no forceful push/pull, 16 lb limit lifting/carrying w/ left arm.
>
> Be assured we will only assign tasks consistent with your physical abilities, knowledge, and skills and will provide training if necessary.

*Id.* Plaintiff signed the form and accepted the TAD assignment. *Id.*

  C.  Wal-Mart's Discipline of Plaintiff

Wal-Mart has a "Coaching for Improvement" policy that governs its progressive discipline process. Stokes Decl., Dkt. 41 ¶ 4. It states, in relevant part:

> Coaching for improvement is a tool we use to provide instruction and assistance to you if:
> • your job performance fails to meet the reasonable expectations and standards for all associates in the same or a similar position
> • your conduct violates a company policy; or
> • your conduct interferes or creates a risk of interfering with the safe, orderly and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-05219 JAK (RAOx) | Date | August 1, 2019 |
|---|---|---|---|
| Title | Jose Rodriguez v. Wal-Mart Stores, Inc., et al. | | |

efficient operation of our business.

. . .

You may receive only one level of coaching in any 12-month period. If subsequent coaching is warranted, you will receive a higher level of coaching. . . .

If your unacceptable job performance or conduct warrants a level of coaching and you have already received a Third Written level or coaching within the previous 12 months, you will be subject to termination.

Ex. C to Stokes Decl., Dkt. 41-3.

On June 6, 2014, Assistant Store Manager Rachel Gomez issued to Plaintiff a First Written Coaching for certain performance-related issues. Ex. AA to Haeffele Decl., Dkt. 40-27. It states, in relevant part:

Observations of Associate's Behavior and/or Performance: Jose has been spoken to multiple times in the past in regards to Compliance and Food Dating. There have been thourough [sic] instructions and discussions with Jose to insure understanding of Food Safety. Today while a routine area tour of his department, multiple items have been found without CVP in Bakery, leading to a loss of sales and more merch. to be damaged out by 4pm.[] Walking the Deli Coolers[,] multiple skus were found being out of date and or having no use by label.[] Those being a Landshire cheeseburger that expired last month the 29th. Reynaldos burritos that had expired and [M]onterrey chimichanga that had no Use By. Also Including Marketside Pizzas that had NO USE BY. Dept. Mngr. Jose had c[o]me in early at 5 am leaving these findings well after the store had opened.

Impact of Associate's Behavior: The impact of Jose[']s behavior show[s] that he lacks initiative when it comes to use by and cust[omer] safety. Potentially causing food bourne [sic] illness to a customer.

Next Level of Action: The next level of action if behavior continues is: Second Written[,] up to and including Termination.

*Id.*

On July 25, 2014, Assistant Store Manager Christen Haaland issued to Plaintiff a Second Written Coaching for certain performance-related issues. Ex. BB to Haeffele Decl., Dkt. 40-28. It states, in relevant part:

Observations of Associate's Behavior and/or Performance: While touring the side counter in frozen and meat some out of date food was found in Jose's area of responsibility. Multiple items were found out of date such as potato salad and pizza. Jose has been coached to show improvement in this area of opportunity for his departments in the past. This needs to be top priority in a perishable department.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-05219 JAK (RAOx) | Date | August 1, 2019 |
|---|---|---|---|
| Title | Jose Rodriguez v. Wal-Mart Stores, Inc., et al. | | |

Impact of Associate's Behavior: When customers find out of date items on our sales floor, we lose the trust of the customer. We lose their trust to provide safe food for their families to eat. We lose their trust to find fresh food on a consistent basis causing Walmart not to be the destination of choice for their shopping needs, resulting in a loss of sales and more importantly a potential loss of health.

Next Level of Action: The next level of action if behavior continues is: Third Written[,] up to and including Termination.

*Id.*

On October 1, 2014, Assistant Store Manager Martin issued to Plaintiff a Third Written Coaching for certain performance-related issues. Ex. CC to Haeffele Decl., Dkt. 40-29. It states, in relevant part:

Observations of Associate's Behavior and/or Performance: Department manager Jose Rodriguez[] has been talked to many times regarding his job performance on proper price change procedures. The following dates have been documented 7/3/14, 7/15/14, 7/22/14, 7/29/14, 10/1/14. Department manager Jose must do a better job at ensuring his price changes and label changes are done correctly.

Impact of Associate's Behavior: If department manager Jose needs additional training we will address that today. By not completing your departments price changes or label changes, we are misrepresenting our prices to our valued customers. Department manager Jose must be more accurate and ensure he does not miss changing the labels when a price change or markdown is done. This is also a weights and measures violation.

Next Level of Action: The next level of action if behavior continues is: Termination.

*Id.*

In January 2015, Plaintiff was demoted to a Sales Associate position. Ex. Z to Haeffele Decl., Dkt. 40-26. At Martin's deposition, she testified that Plaintiff's "demotion was a culmination of many factors. Some of them compliance-related, some of them job performance related." Martin Depo. Tr., Vol. II at 327:19-21.

On March 4, 2015, Claims Supervisor Starla Hightower ("Hightower") reported an issue about Plaintiff's performance that she concluded was a Hazmat violation. Ex. H to Declaration of Jason Bluver, Dkt. 42-9. Hightower prepared and signed the following statement concerning the incident:

On March 4th at 3:05 pm Associate Jose came to Claims with a cart of Department 13 (chemical). He had two bottles of bleach that needed to be hazmat. He said he needed help remembering how to do hazmat. I was not on the clock, so I called out for assistance. Someone helped him get started. The next morning I checked the hazmat buckets. The bucket labels were fine. I opened the buckets and found that all the bags he had done did not have a knot on all the liner bags. I fixed all the bags and told management. After work I saw my night associate Linda. I asked her about the buckets and she said that the label dates were placed in the wrong line. So Linda corrected the labels as she was correcting

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-05219 JAK (RAOx) | Date | August 1, 2019 |
|---|---|---|---|
| Title | Jose Rodriguez v. Wal-Mart Stores, Inc., et al. | | |

the labels. She found one bucket had a lid placed on it but not tightened. I told management the next day.

*Id.*

On March 6, 2015, Wal-Mart terminated Plaintiff's employment. Ex. W to Martin Decl., Dkt. 39-23. The "Manager Comments" on the associated termination document state: "Jose completed the haz-waste process improperly and did not cover all of the buckets, sales associate Jose was already on a 3rd coaching, causing his termination." *Id.* The termination paperwork was "electronic[ally] acknowledge[d]" by Plaintiff and by Martin on behalf of Wal-Mart. *Id.*

**III.     Analysis**

      A.    Motion for Summary Judgment

           1.    <u>Legal Standards for a Motion for Summary Judgment</u>

A motion for summary judgment will be granted where the pleadings, "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that there is "no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). The party seeking summary judgment bears the initial burden to show the basis for its motion and to identify those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Where the nonmoving party will have the burden of proof on an issue, however, the movant need only demonstrate that there is an absence of evidence to support the claims of the nonmoving party. *See id.* at 324. If the moving party meets its initial burden, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

"By its very terms, th[e] [summary judgment] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Moreover, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Only facts supported by admissible evidence may be considered in connection with a motion for summary judgment. Fed. R. Civ. P. 56(c). In particular, "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* However, in considering such a motion, a court is not to make any credibility determinations or weigh conflicting evidence. *See Alameda Books, Inc. v. City of Los Angeles*, 631 F.3d 1031, 1042-43 (9th Cir. 2011) ("The credibility of witnesses is almost categorically a trial issue."). All inferences are to be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-05219 JAK (RAOx) | Date | August 1, 2019 |
|---|---|---|---|
| Title | Jose Rodriguez v. Wal-Mart Stores, Inc., et al. | | |

drawn in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). However, conclusory, speculative testimony in declarations or other evidentiary materials is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

"A plaintiff alleging employment discrimination need produce very little evidence in order to overcome an employer's motion for summary judgment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (internal quotations removed). "In evaluating motions for summary judgment in the context of employment discrimination, [the Ninth Circuit] ha[s] emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses." *Id.*; *see also Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1144 (9th Cir. 2006) ("This Court has set a high standard for the granting of summary judgment in discrimination cases because the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record.") (internal citations and alterations removed).

      2.    <u>Application</u>

          a)    Disability Discrimination under the FEHA

              (1)    <u>Legal Standards</u>

The "FEHA prohibits an employer from, among other things, discharging a person from employment because of a medical condition or physical disability." *Soria v. Univision Radio Los Angeles, Inc.*, 5 Cal. App. 5th 570, 583 (2016), *review denied* (Mar. 1, 2017) (citing Cal. Gov't Code § 12940(a)). With respect to the FEHA, the term "physical disability"

> includes, but is not limited to . . . [h]aving any physiological disease, disorder, condition, cosmetic disfigurement, or anatomical loss that does both of the following:
> (A) Affects one or more of the following body systems: neurological, immunological, musculoskeletal, special sense organs, respiratory, including speech organs, cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin, and endocrine.
> (B) Limits a major life activity.

Cal. Gov't Code § 12926(m)(1).

"Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying [California's] own statutes. *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 354 (2000). In particular, California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination . . . based on a theory of disparate treatment." *Id.* This test proceeds as follows:

> First, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. The employer then must offer a legitimate nondiscriminatory reason for the adverse employment decision. Finally, the plaintiff bears the burden of proving the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-05219 JAK (RAOx) | | Date | August 1, 2019 |
|---|---|---|---|---|
| Title | Jose Rodriguez v. Wal-Mart Stores, Inc., et al. | | | |

employer's proffered reason was pretextual.

*Brundage v. Hahn*, 57 Cal. App. 4th 228, 236 (1997) (internal citations omitted); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

"A prima facie case for discrimination on grounds of physical disability under the FEHA requires plaintiff to show: (1) he suffers from a disability; (2) he is otherwise qualified to do his job; and, (3) he was subjected to adverse employment action because of his disability." *Faust v. California Portland Cement Co.*, 150 Cal. App. 4th 864, 886 (2007) (internal quotations omitted). "In order to show a prima facie case of discrimination, a plaintiff must offer evidence that gives rise to an inference of unlawful discrimination. That evidence may be either direct or circumstantial, and very little is required." *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 917 (9th Cir. 1996) (internal quotations and brackets removed). "[C]onduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination." *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1139-40 (9th Cir. 2001). "The link between the disability and termination is particularly strong where it is the employer's failure to reasonably accommodate a known disability that leads to discharge for performance inadequacies resulting from that disability." *Id.* at 1140.

"To demonstrate a legitimate, nondiscriminatory reason for its decision to terminate [a plaintiff], [the employer] 'must show that the procedure by which [the plaintiff] was terminated was validly and fairly devised and administered to serve a legitimate business purpose.'" *Dep't of Fair Employment & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 745-46 (9th Cir. 2011) (quoting *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 224 (1999)).

In response, "a plaintiff can prove pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000). "These two approaches are not exclusive; a combination of the two kinds of evidence may in some cases serve to establish pretext so as to make summary judgment improper." *Id.* "Furthermore, in making such showing, [a plaintiff] does not necessarily have to introduce additional, independent evidence of discrimination." *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093-94 (9th Cir. 2001). However, "[a]n employee in this situation cannot simply show the employer's decision was wrong, mistaken, or unwise." *Lucent Techs.*, 642 F.3d at 746.

"The distinction between direct and circumstantial evidence is crucial, because it controls the amount of evidence that the plaintiff must present in order to defeat the employer's motion for summary judgment." *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005). A plaintiff need only offer "'very little' direct evidence to raise a genuine issue of material fact" because it is "so probative." *Id.* (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998)). On the other hand, a plaintiff must present "specific and substantial" evidence "to defeat the employer's motion for summary judgment" if it relies exclusively on circumstantial evidence." *Id.* (quoting *Godwin*, 150 F.3d at 1222); *see also Harris v. City of Santa Monica*, 56 Cal. 4th 203, 232 (2013) (noting that a plaintiff must "show that discrimination was a *substantial* motivating factor, rather than simply *a* motivating factor" in adverse employment decisions) (emphasis in original).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-05219 JAK (RAOx) | Date | August 1, 2019 |
|---|---|---|---|
| Title | Jose Rodriguez v. Wal-Mart Stores, Inc., et al. | | |

"[T]emporal proximity alone is not sufficient to raise a triable issue as to pretext once the employer has offered evidence of a legitimate, nondiscriminatory reason for the termination." *Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327, 353 (2008). However,

> [t]his is not to say that temporal proximity is never relevant in the final step of the *McDonnell Douglas* test. In the classic situation where temporal proximity is a factor, an employee has worked for the same employer for several years, has a good or excellent performance record, and then, after engaging in some type of protected activity—disclosing a disability—is suddenly accused of serious performance problems, subjected to derogatory comments about the protected activity, and terminated. In those circumstances, temporal proximity, together with the other evidence, may be sufficient to establish pretext.

*Id.* at 353-54. Further, "[a] defendant's failure to follow its own policies or procedures may also provide evidence of pretext." *Moore v. Regents of Univ. of California*, 248 Cal. App. 4th 216, 239 (2016).

(2)    Application

Defendant does not dispute either that Plaintiff had a disability or that he was otherwise qualified to perform the essential functions of his job. Nor does Defendant dispute that Plaintiff was subjected to an adverse employment action. Rather, Defendant argues that Plaintiff's disability was not the reason for any adverse employment actions. Defendant asserts that deficiencies in Plaintiff's job performance, not his injury, led to his successive "coachings" and his ultimate termination. Defendant provides evidence that the deficiencies and corresponding "coachings" were well-documented, and that the discipline process complied with Wal-Mart's policies. Defendant contends that it went above and beyond what was required to accommodate Plaintiff's work restrictions.

Plaintiff responds that he received positive performance evaluations from Defendant until he became injured, at which point Defendant's treatment of him changed. He contends that his performance received more scrutiny after his injury, and that he was improperly disciplined for failing to perform tasks that violated his work restrictions. He further contends that his supervisors showed certain indicia of animus, such as laughing at him and giving him "bad looks" while he was on light duty, and that his employment was sabotaged to prevent his success at Wal-Mart after his injury.

Plaintiff presents evidence that he had a history of good job performance at Wal-Mart. It includes that he received several awards for his work as well as two promotions. Rodriguez Decl., Dkt. 62 ¶¶ 5-8. He also presents evidence showing that he had no history of "write-ups" for deficient job performance until he became injured. *Id.* ¶ 24. Similarly, he had not received any "coachings" for the nearly three years of his employment that preceded his injury, but was subjected to three successive "coachings" in the six months following his injury. Martin Decl., Dkt. 39 ¶¶ 35-37. In the six months thereafter, Plaintiff received a demotion when, according to Defendant, his "performance did not improve," and then he received a final citation that culminated in his termination. *Id.* ¶¶ 38-39. This timeline provides some support for an inference of discrimination.

Plaintiff also presents evidence that, while he was assigned to perform sit-down work due to his injury, some of his supervisors "would pass by [his] desk and laugh at [him]." Rodriguez Decl., Dkt. 62 ¶ 21;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-05219 JAK (RAOx) | Date | August 1, 2019 |
|---|---|---|---|
| Title | Jose Rodriguez v. Wal-Mart Stores, Inc., et al. | | |

Rodriguez Depo. Tr. at 47:23-48:7. Plaintiff presents evidence that some of his other supervisors, including Martin, "would also pass by [his] area and give [him] dirty looks" while he was on light duty. *Id.* Although no admissible evidence has been presented as to the motivation for this conduct, all reasonable inferences must be drawn in favor of the non-moving party on a motion for summary judgment. A jury could draw the inference that this conduct by Plaintiff's supervisors reflected animus toward his disability and/or resentment of the works restrictions that were due to his disability. In addition, Martin was a decision-maker involved in Plaintiff's discipline and demotion. Martin Depo. Tr., Vol. II at 238:24-239:25. This also provides some support for an inference of discrimination.

Plaintiff also presents evidence that his disability and/or his supervisors' conduct in response to his disability may have contributed to the deficiencies cited in his "coachings." At his deposition, Plaintiff testified that he was not able to perform certain duties of the department manager position because of his injury. Rodriguez Depo. Tr. at 47:4-22; *see also* Rodriguez Decl., Dkt. 62 ¶ 23. He testified that, for the period after his injury in which he resumed the department manager position, his subordinates performed those duties. Rodriguez Depo. Tr. at 47:4-22. However, Plaintiff presents evidence that other managers began to "take Sales Associates out of [his] department and reassign them to do other duties" in addition to imposing other impediments to his job performance. Rodriguez Decl., Dkt. 62 ¶¶ 27-28, 48. Plaintiff testified that, at minimum, one of his "coachings" arose out of a situation where he had assigned a Sales Associate to perform certain manual tasks "but another manager came and took that person to a different department." Rodriguez Depo. Tr. at 94:3-15.

Plaintiff also presents evidence to support his claim that his work restrictions limited his capacity to perform on his own the duties for which he was "coached." This included item relabeling. Rodriguez Decl., Dkt. 62 ¶ 39-45. He declares that such tasks required repetitive reaching and overhead work that he could not perform given the restrictions imposed due to his injury. *Id.* ¶ 42, 45. Defendant presents certain responsive evidence that Wal-Mart provides adequate accommodations so that overhead reaching is unnecessary. These include stools and ladders that are lightweight and easy to carry. However, Defendant does not present evidence that negates Plaintiff's testimony that these tasks required the type of repetitive reaching from which he was restricted.

Defendant also presents certain evidence that Plaintiff retained full use of his right arm, although his left arm was injured. However, there remains a genuine dispute of material fact as to whether Plaintiff could perform each of the relevant tasks effectively by using only his right arm, and whether Plaintiff's restrictions applied only to his left arm at all times. Plaintiff declares that these duties required him to breach his reaching and overhead restrictions. Defendant disagrees. In addition, the majority of the documents in the record do not state that the work restrictions apply only to Plaintiff's left arm. It is not until the documentation dated January 15, 2015 that the reference to Plaintiff's work restrictions is expressly limited in that manner.

Defendant also presents evidence that Plaintiff was not required to perform the tasks he has identified. Instead, it contends that Plaintiff's duty was to make sure that the work was completed, and that it could have been done by someone under his direction. Thus, Defendant contends he could have assigned the manual tasks to other employees and/or asked for their help. However, in light of Plaintiff's evidence that his subordinates were "take[n] . . . out of [his] department and reassign[ed]" on "at least a daily basis," and that "[e]ver since [he] became injured . . . [t]he Assistant Managers started to ignore [him] and refuse to talk to [him] when [he] would ask for help," there remains a genuine dispute of material fact as to whether

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-05219 JAK (RAOx) | Date | August 1, 2019 |
|---|---|---|---|
| Title | Jose Rodriguez v. Wal-Mart Stores, Inc., et al. | | |

this solution was available. *Id.* ¶¶ 28, 47-48. Accordingly, there remains a genuine dispute of material fact as to whether Plaintiff was "coached" for conduct that arose out of his disability and/or Defendant's failure reasonably to accommodate his disability. In addition, a factfinder could draw an inference of discrimination from the proffered evidence that Plaintiff's managers reassigned his subordinates from his department and "ignore[d]" and "refus[ed] to talk to" Plaintiff when he would seek help.

Plaintiff also makes certain claims with respect to his final discipline for a hazmat violation, which led to his termination. He contends that he was terminated for committing a hazmat violation while he was being retrained on hazmat procedure, but "no other employees have been terminated for committing an error while being *retrained* on Hazmat." Dkt. 48 at 17 (emphasis in original). However, the record citation provided for that statement does not support it. Nonetheless, because Plaintiff's termination arose from a combination of his successive "coachings" and his hazmat violation, it is not necessary to consider Plaintiff's contentions regarding Wal-Mart's reaction to the latter to conclude that there is a triable issue as to discriminatory adverse employment actions. The "coachings" were a substantial factor in Plaintiff's termination, as they set in motion the disciplinary process that led to Plaintiff's termination. They were also cited by Wal-Mart as a reason for Plaintiff's termination.

For these reasons, there are genuine disputes of material fact as to the following: (i) whether Plaintiff was "coached," demoted and ultimately terminated because of his disability; (ii) whether Defendant's proffered reasons for taking those adverse employment actions were non-discriminatory from the outset; and (iii) whether, even if Defendant's proffered reasons were legitimate on their face, they were pretextual. Plaintiff has not provided direct evidence as to pretext, but he has provided substantial circumstantial evidence of pretext that is sufficient to raise genuine disputes of material fact on the issue. Credibility determinations and a weighing of the evidence are not appropriate on a motion for summary judgment. Summary judgment is inappropriate in light of the outstanding material factual disputes as to Plaintiff's claim for disability discrimination.

For the foregoing reasons, the Motion for Summary Judgment is **DENIED** as to the claim for disability discrimination.

     b)  Reasonable Accommodation

     (1)  <u>Legal Standards</u>

"The FEHA imposes on the employer the obligation to make reasonable accommodation." *Scotch v. Art Inst. of California*, 173 Cal. App. 4th 986, 1003 (2009). It provides, in relevant part:

> It is an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:
> . . .
> (m) For an employer . . . to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee.

Cal. Gov't Code § 12940.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-05219 JAK (RAOx) | Date | August 1, 2019 |
|---|---|---|---|
| Title | Jose Rodriguez v. Wal-Mart Stores, Inc., et al. | | |

"To establish a reasonable accommodation claim, an employee must show that (1) the employee has a disability under FEHA, (2) the employee is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the employee's disability." *Aparicio v. Comcast, Inc.*, 274 F. Supp. 3d 1014, 1029 (N.D. Cal. 2017). "A reasonable accommodation is 'a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired.'" *Id.* (quoting *Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 974 (2008)). However, "[a]n employer is not required to make an accommodation 'that is demonstrated by the employer . . . to produce undue hardship to its operation.'" *Scotch*, 173 Cal. App. 4th at 1003 (citation omitted).

(2)     Application

Defendant does not dispute that Plaintiff had a disability or that he was qualified to perform the essential functions of his job. Rather, Defendant contends that there is no basis to claim that it failed reasonably to accommodate Plaintiff's disability. Defendant presents evidence that it provided Plaintiff with a series of TAD assignments that were designed to accommodate Plaintiff's work restrictions. It presents evidence that those accommodations were reasonable, *i.e.*, that they would allow Plaintiff to perform the essential duties of his job while working in conformance with his work restrictions.

Plaintiff does not dispute that he received TAD assignments from Defendant. However, Plaintiff contends that those assignments did not comply fully with his work restrictions. He further contends that he was required to perform job duties beyond those assigned under the TADs, and that such duties violated his work restrictions. In addition, Plaintiff asserts that Defendants did not consistently provide some of the assistance that Defendant contends was available to assist him in performing his job duties, including the support of his subordinates.

For the reasons described above, there are genuine disputes of material fact as to whether Defendant provided Plaintiff with reasonable accommodation to perform his department manager duties given his disabilities. There are also genuine disputes of material fact as to whether Defendant provided Plaintiff with reasonable accommodation upon his demotion to a Sales Associate position. The operative inquiry is not the accommodation as stated on the TAD form, but rather the duties required and accommodations available in practice.

At his deposition, Plaintiff testified that he "suffered a lot" upon his demotion because he "had to do [every]thing without help" and could not assign tasks such as lifting heavy items to other employees. Rodriguez Depo. Tr. at 99:23-100:14; *see also* Rodriguez Decl., Dkt. 62 ¶¶ 53-54. Plaintiff declares that he "was constantly required to lift heavy boxes and reach overhead" to fulfill his Sales Associate responsibilities. Rodriguez Decl., Dkt. 62 ¶ 53. These tasks would violate Plaintiff's work restrictions. Defendant responds that Plaintiff could, and did, seek the help of his fellow employees, even if he could not formally delegate tasks in his Sales Associate position. Defendant further argues that Plaintiff's testimony is inconsistent and incredible. However, Plaintiff's testimony and declaration are not so irreconcilable as to render the latter a sham. A factfinder could determine that Plaintiff is not credible and could discount his testimony accordingly. However, such determinations cannot be made or resolved on summary judgment.

For the foregoing reasons, the Motion for Summary Judgment is **DENIED** as to the reasonable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-05219 JAK (RAOx) | Date | August 1, 2019 |
|---|---|---|---|
| Title | Jose Rodriguez v. Wal-Mart Stores, Inc., et al. | | |

accommodation claim.

    c)  Interactive Process

    (1)  <u>Legal Standards</u>

"The FEHA makes it unlawful for an employer 'to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition.'" *Scotch*, 173 Cal. App. 4th at 1003 (quoting Cal. Gov't Code § 12940(n)). "Section 12940, subdivision (n) imposes separate duties on the employer to engage in the "'interactive process'" and to make "'reasonable accommodations."'" *Id.* (citations omitted).

"The interactive process imposes burdens on both the employer and employee. The employee must initiate the process unless the disability and resulting limitations are obvious." *Id.* at 1013. "Once the interactive process is initiated, the employer's obligation to engage in the process in good faith is continuous." *Id.* "The employer's obligation to engage in the interactive process extends beyond the first attempt at accommodation and continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed. This rule fosters the framework of cooperative problem-solving contemplated by the ADA, by encouraging employers to seek to find accommodations that really work." *Id.* (citation omitted).

"Both employer and employee have the obligation 'to keep communications open' and neither has 'a right to obstruct the process.'" *Id.* at 1014 (citation omitted). "Each party must participate in good faith, undertake reasonable efforts to communicate its concerns, and make available to the other information which is available, or more accessible, to one party. Liability hinges on the objective circumstances surrounding the parties' breakdown in communication, and responsibility for the breakdown lies with the party who fails to participate in good faith." *Id.*

    (2)  <u>Application</u>

Defendant does not dispute that Plaintiff had a disability or that it knew about his disability. Rather, Defendant asserts that it fulfilled its obligation to engage in a timely, good faith, interactive process with Plaintiff to determine reasonable accommodation for his disability. Defendant presents evidence that it provided Plaintiff with a series of TAD assignments that conformed to his work restrictions and that it responded to changes in those restrictions over time with new appropriate accommodations. Defendant presents evidence that it met with Plaintiff to review those TAD assignments and that he signed each TAD form.

Plaintiff contends that Defendant did not engage in the interactive process in good faith, that Plaintiff did not have input in the process, and that deficiencies in the accommodations provided were not addressed despite his complaints. Plaintiff presents evidence through his declaration that, during the meeting in which he received his first TAD assignment, "no one asked [him] what [his] work limitations were or what job duties [he] could or could not do because of [his] injury, or if [he] had any concerns with the TAD." Rodriguez Decl., Dkt. 62 ¶ 19. He declares that he "did not have an opportunity to change the accommodations being provided," and that "at no point when [he] was injured did anyone from Wal-Mart

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-05219 JAK (RAOx) | Date | August 1, 2019 |
|---|---|---|---|
| Title | Jose Rodriguez v. Wal-Mart Stores, Inc., et al. | | |

ask [him] what job duties [he] was capable of performing while being injured or whether [his] alternative duty assignments were compatible with [his] restrictions." *Id.* ¶¶ 19, 20.

Plaintiff declares that he told Martin that he was continuing to experience pain in his shoulder, in a conversation concerning certain deficiencies in his job performance. *Id.* ¶¶ 31, 34, 42. Plaintiff also declares that he told Olguin that he was being forced to do work that violated his work restrictions, including lifting heavy boxes and reaching overhead. *Id.* ¶ 37. Plaintiff declares that Olguin said he would "look into" Plaintiff's complaint, but that Olguin never did. *Id.* ¶ 38.

Defendant contends that these statements in Plaintiff's declaration conflict with his prior deposition testimony and that the declaration is a "sham." Although Plaintiff responded that he did not recall the answer to several related questions, his deposition testimony does not contradict these statements in his declaration. Plaintiff would be competent to testify to these statements at a trial, and the determination of credibility of Plaintiff's testimony would be left to the factfinder. Such credibility determinations are not appropriate for resolution on summary judgment.

Plaintiff has presented evidence that the process to determine his accommodations was not "interactive," and that Defendant did not follow up when Plaintiff made it clear that the accommodations provided were insufficient. The evidence presented shows that there is a genuine dispute of material fact as to whether Defendant "fail[ed] to engage in a timely, good faith, interactive process . . . to determine effective reasonable accommodations" for Plaintiff's disability. *Scotch*, 173 Cal. App. 4th at 1003.

For the foregoing reasons, the Motion for Summary Judgment is **DENIED** as to the interactive process claim.

        d)     Retaliation

        (1)     <u>Legal Standards</u>

"The FEHA makes it unlawful for an employer 'to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part.'" *Scotch*, 173 Cal. App. 4th at 1003 (quoting Cal. Gov't Code § 12940(h)). To state a claim for retaliation, "a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). "Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982). "This requires evidence from which a reasonable factfinder can infer the decision maker (or at least one of them if more than one) in the challenged action was aware of the protected activity." *Pinder v. Employment Dev. Dep't*, 227 F. Supp. 3d 1123, 1147 (E.D. Cal. 2017); *see also Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 73-74 (2000).

Until recently, "a request for an accommodation, without more, was insufficient to constitute 'protected activity' under [the FEHA], and such activity thus could not support a claim for retaliation." *Moore*, 248 Cal. App. 4th at 247; *see also Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 381 (2015) (affirming summary judgment for employer on FEHA retaliation claim because "protected activity does not include a mere request for reasonable accommodation"). In 2015, the Legislature amended the FEHA "to provide

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-05219 JAK (RAOx) | Date | August 1, 2019 |
|---|---|---|---|
| Title | Jose Rodriguez v. Wal-Mart Stores, Inc., et al. | | |

protection against retaliation when an individual makes a request for reasonable accommodation under these sections." *Moore*, 248 Cal. App. 4th at 245 (quoting Assem. Bill 987, § 1(d)). The amended provisions took effect on January 1, 2016 and "operate[] prospectively." *Id.* at 245-47. Therefore, the amendments do not govern claims that arose before 2016. *Id.* For such claims, it remains the law that a plaintiff's "exercise of his right to request reasonable accommodation was not protected activity for purposes of a FEHA retaliation claim." *Nealy*, 234 Cal. App. 4th at 381; *see also Moore*, 248 Cal. App. 4th at 247; *Carballo v. Comcast, Inc.*, 690 F. App'x 1006, 1009 (9th Cir. 2017).

(2)  Application

Plaintiff advances two bases for his retaliation claim: (i) "Mr. Rodriguez engaged in protected activity by requesting accommodations in connection with his disability;" and (ii) "Plaintiff further engaged in protected activity by complaining to SM Olguin on two occasions concerning the discrimination he suffered at the hands of ASM Martin and others." Dkt. 48 at 30-31. As to the first, Plaintiff's claim arose before 2016. It is undisputed that Plaintiff was terminated by Wal-Mart in 2015. Rodriguez Decl., Dkt. 62 ¶ 63. Therefore, the amendments to the FEHA do not govern, and Plaintiff's "exercise of his right to request reasonable accommodation was not protected activity for purposes of a FEHA retaliation claim." *Nealy*, 234 Cal. App. 4th at 381.

As to the second, Plaintiff has not provided any support for the element of causation. Plaintiff asserts that he complained to SM Olguin about certain alleged discrimination, and he provides a declaration and deposition testimony to that effect. *See* Dkt. 50 at 22. Plaintiff contends that "no remedial action was taken" in response to his complaints. *Id.* Plaintiff also asserts that "ASM Martin made the decision to terminate Mr. Rodriguez," and "SM Olguin was not involved in the termination in any way." *See* Dkt. 50 at 24. Plaintiff has not provided any direct or indirect evidence to support the proposition that the person he contends was the decision-maker, ASM Martin, was aware of Plaintiff's complaints to SM Olguin or took action in response to those complaints.

For the foregoing reasons, the Motion for Summary Judgment is **GRANTED** as to the retaliation claim.

e)  Wrongful Termination in Violation of Public Policy

(1)  Legal Standards

"Under California law, employment is at-will unless the parties contract otherwise. California courts, however, have carved out a specific exception to this general rule: an employer will be liable if it terminates an employee in violation of public policy." *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1137 (9th Cir. 2003) (internal citation omitted). Thus, "[t]he elements for this tort are (1) the existence of a public policy and (2) a nexus between the public policy and an employee's termination." *Dep't of Fair Employment & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 749 (9th Cir. 2011).

The California Supreme Court has "conclude[d] that disability discrimination can form the basis of a common law wrongful discharge claim." *City of Moorpark v. Superior Court,* 18 Cal. 4th 1143, 1161 (1998); *see also* Cal. Gov't Code § 12920 ("It is hereby declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of . . . physical disability."). "But the tort

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-05219 JAK (RAOx) | Date | August 1, 2019 |
|---|---|---|---|
| Title | Jose Rodriguez v. Wal-Mart Stores, Inc., et al. | | |

claim based on a violation of the FEHA is limited by the terms of the statute. In other words, the viability of plaintiff's tort claim is tethered to the meaning of the FEHA." *Estes v. Monroe*, 120 Cal. App. 4th 1347, 1355 (2004) (internal citations omitted).

(2)    Application

Plaintiff's wrongful termination claim is derivative of his claim for disability discrimination. Plaintiff's termination is the principal adverse employment action that underlies his disability discrimination claim. Thus, for the same reasons stated as to that claim, there are genuine disputes of material fact regarding wrongful termination. Accordingly, the Motion for Summary Judgment is **DENIED** as to the wrongful termination claim.

\*       \*       \*

For the foregoing reasons, the Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART.**

B.    Jurisdictional Motion

1.    Legal Standards

a)    FEHA Administrative Exhaustion

"Under FEHA, the employee must exhaust the administrative remedy provided by the statute by filing a complaint with the Department of Fair Employment and Housing (Department) and must obtain from the Department a notice of right to sue in order to be entitled to file a civil action in court based on violations of the FEHA." *Romano v. Rockwell Internat., Inc.*, 14 Cal. 4th 479, 492 (1996). Such a complaint must be filed no later than "one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred," with certain narrow exceptions. Cal. Gov't Code § 12960. "Exhaustion of these procedures is mandatory; an employee may not proceed in court with a FEHA claim without first obtaining a right-to-sue letter." *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 106 (2008).

"Although California courts describe exhaustion as a jurisdictional prerequisite to suit under FEHA, this label does not implicate the trial court's fundamental subject matter jurisdiction." *Rodriguez v. Airborne Express*, 265 F.3d 890, 900 (9th Cir. 2001); *see also Kim v. Konad USA Distribution, Inc.*, 226 Cal. App. 4th 1336, 1347 (2014) ("'jurisdictional prerequisite' does not mean subject matter jurisdiction in the context of exhaustion of administrative remedies"); *Mokler v. Cty. of Orange*, 157 Cal. App. 4th 121, 135 (2007) ("Although earlier cases tended to view the exhaustion doctrine as invalidating a court's subject matter jurisdiction, thus allowing a defendant to raise it at any time, later cases have generally . . . conclude[ed] a defendant waives the defense by failing to timely assert it.") (internal citations omitted). "The administrative time limits prescribed by FEHA are treated as equivalent to statutes of limitations and are subject to equitable doctrines such as waiver, estoppel, and tolling." *Id.*; *see, e.g.*, *McDonald*, 45 Cal. 4th at 111 (equitable tolling); *Keiffer v. Bechtel Corp.*, 65 Cal. App. 4th 893, 899 (1998), *as modified on denial of reh'g* (Aug. 18, 1998) (waiver); *Denney v. Universal City Studios, Inc.*, 10 Cal. App. 4th 1226, 1234 (1992), *abrogated on other grounds by Moorpark v. Superior Court*, 18 Cal. 4th 1143 (1998) (declining to apply rigid administrative exhaustion time bar, because "neither equity nor the purposes of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-05219 JAK (RAOx) | Date | August 1, 2019 |
|----------|--------------------------|------|----------------|
| Title | Jose Rodriguez v. Wal-Mart Stores, Inc., et al. | | |

the [FEHA] exhaustion requirement would support or permit barring [plaintiff]'s claims").

b)      Continuing Violation Doctrine

The California Supreme Court has consistently held that, "[i]n order to carry out the purpose of the FEHA to safeguard the employee's right to hold employment without experiencing discrimination, the limitations period set out in the FEHA should be interpreted so as to promote the resolution of potentially meritorious claims on the merits." *McDonald*, 45 Cal. 4th at 108 (citation omitted). Accordingly, the FEHA statute of limitations is construed liberally. *Id.*

Pursuant to the continuing violation doctrine, "an employer is liable for actions that take place outside the limitations period if these actions are sufficiently linked to unlawful conduct that occurred within the limitations period." *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1056 (2005). "The FEHA statute of limitations begins to run when an alleged adverse employment action acquires some degree of permanence or finality," but not sooner. *Id.* at 1059. The continuing violation doctrine is motivated by the principle that "the employer that creates or permits a persistent pattern of harassment or failure to reasonably accommodate that makes its working conditions unfavorable to the employee . . . cannot complain of delay when the employee retains employment in hopes that informal conciliation will succeed." *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 822 (2001).

Courts consider the following factors in assessing whether the continuing violation doctrine applies:

whether "the employer's actions were (1) sufficiently similar in kind—recognizing, as this case illustrates, that similar kinds of unlawful employer conduct, such as acts of harassment or failures to reasonably accommodate disability, may take a number of different forms . . . ; (2) have occurred with reasonable frequency; (3) and have not acquired a degree of permanence."

*Yanowitz*, 36 Cal. 4th at 1059 (quoting *Richards*, 26 Cal. 4th at 823). "'[P]ermanence' . . . should properly be understood to mean the following: that an employer's statements and actions make clear to a reasonable employee that any further efforts at informal conciliation to obtain reasonable accommodation or end harassment will be futile." *Richards*, 26 Cal. 4th at 823.

c)      Motion for Judgment on the Pleadings

Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). "However, judgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment." *Id.*; *see* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Fed. R. Civ. P. 56 provides that "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." However, a defect in subject matter jurisdiction may be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-05219 JAK (RAOx) | Date | August 1, 2019 |
|---|---|---|---|
| Title | Jose Rodriguez v. Wal-Mart Stores, Inc., et al. | | |

raised at any time. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

2.    <u>Application</u>

In the Jurisdictional Motion, Defendant argues that Plaintiff did not administratively exhaust all of his claims pursuant to the FEHA and, for that reason, there is no jurisdiction here over any unexhausted claims. Defendant asserts that, because Plaintiff's claims accrued more than one year prior to his filing of an administrative complaint with the DFEH, *i.e.*, before March 3, 2015, they fall outside the FEHA limitations period. Accordingly, Defendant seeks dismissal of Plaintiff's "pre-March 2015" claims for disability discrimination, failure to provide reasonable accommodation and failure to engage in a good faith interactive process.

Plaintiff responds that he timely exhausted his administrative remedies, because he filed his administrative complaint within one year of his allegedly unlawful termination and his claims are subject to the continuing violation doctrine. Plaintiff also argues that, even if he had not timely exhausted these claims, that failure would not preclude subject matter jurisdiction. Accordingly, he argues that the Jurisdictional Motion is procedurally improper and untimely, and that it should not be considered on the merits. He contends that the Jurisdictional Motion could not be brought as a motion for judgment on the pleadings, because it is premised on matters outside the pleadings, and if it is construed as a motion for summary judgment, it is untimely.

Ninth Circuit authority establishes that, "[a]lthough California courts describe exhaustion as a jurisdictional prerequisite to suit under FEHA, this label does not implicate the trial court's fundamental subject matter jurisdiction." *Rodriguez*, 265 F.3d at 900. The case law is not entirely clear as to the definition of "jurisdictional prerequisite" in the context of FEHA administrative exhaustion. However, what is clear is that such a "prerequisite" is not a fundamental defect in subject matter jurisdiction, requiring dismissal pursuant to Fed. R. Civ. P. 12(h)(3). As the Ninth Circuit recognized, this is reinforced by the fact that "[t]he administrative time limits prescribed by FEHA are treated as equivalent to statutes of limitations and are subject to equitable doctrines such as waiver, estoppel, and tolling." *Id.* Accordingly, there is subject matter jurisdiction to adjudicate any claims that were not wholly exhausted through the administrative process. Thus, Defendant's "suggestion as to lack of jurisdiction pursuant to Fed. R. Civ. P. 12(h)(3)" is **DENIED**.

As noted, Defendant has also moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). However, the motion is based almost entirely on a matter outside the pleadings, *i.e.*, Plaintiff's declaration. Accordingly, it must be treated as a motion for summary judgment pursuant to Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(d). Plaintiff contends that, if it is construed as a motion for summary judgment, the motion is highly untimely. The motion was filed neither by September 7, 2018, which was the last day to file all motions in this action, nor within 30 days of the completion of discovery, which was at a similar time. Nevertheless, the failure to file the motion within these limits can be excused because the ground for the motion did not arise until Plaintiff filed his declaration.

Plaintiff's declaration was filed initially on December 3, 2018. An updated version was then filed on January 22, 2019, but it was the same in all material respects as the original one. To the extent the arguments raised in Defendant's motion arise from new facts introduced by Plaintiff's declaration,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-05219 JAK (RAOx) | Date | August 1, 2019 |
|---|---|---|---|
| Title | Jose Rodriguez v. Wal-Mart Stores, Inc., et al. | | |

Defendant knew of them by no later than December 3, 2018. Defendant did not raise the issue of administrative exhaustion either in its reply brief on the Motion for Summary Judgment, which it filed on December 10, 2018, or at the January 7, 2019 hearing on the Motion for Summary Judgment. Defendant did not raise arguments as to administrative exhaustion until March 14, 2019, when it filed this motion. That delay is not excusable, and could be construed as an effort to have a "second bite at the apple" after the Court stated its tentative views on the Motion for Summary Judgment at the hearing on January 7. Accordingly, this summary judgment motion is untimely.

Even if it were considered on the merits, there are, at minimum, genuine disputes of material fact as to the applicability of the continuing violation doctrine that preclude summary judgment on this basis. *Accord Yanowitz*, 36 Cal. 4th at 1059-60 (reversing a grant of summary adjudication because, *inter alia*, "in light of the evidence submitted by the parties at the summary adjudication stage, we cannot determine that the continuing violation doctrine is inapplicable as a matter of law").

The undisputed facts do not demonstrate that Defendant's alleged misconduct became fixed and final prior to the termination of Plaintiff. Accordingly, the alleged misconduct that occurred outside of the limitations period would not be barred to the extent there was a sufficient continuation of that conduct through the applicable time period. Plaintiff presents evidence that he received certain mixed messages from Defendant, such that, despite the alleged violations, the reasonable employee could retain "hope that conditions will improve or that informal conciliation may succeed." *Richards*, 26 Cal. 4th at 822-23 (citation omitted). This creates a disputed issue of fact.

Plaintiff declares that he received assurances from Olguin that his job was secure and that he would be accommodated for his disability. Rodriguez Decl., Dkt. 62 ¶ 38. Plaintiff declares that "Olguin told [Plaintiff] that as long as [Olguin] was the Store Manager [Plaintiff] would not be fired." *Id.* In addition, Defendant contends that it took a more lenient approach than its disciplinary policy would require by demoting Plaintiff in January 2015 rather than terminating him, despite his three prior written "coachings." *See, e.g.*, Dkt. 44 at 21 ("[D]espite continuing to exhibit unacceptable job performance while on a Level III Coaching (final warning), Plaintiff was given an additional chance at stage III of the progressive discipline process in the form of a demotion, rather than a termination of employment."); *id.* at 22 ("[A]ccording to Walmart's progressive discipline policy, '[i]f your unacceptable job performance or conduct warrants a level of coaching and you have already received a Third Written level of coaching within the previous 12 months you will be subject to termination.' (T.S. decl., ¶4 and Exh. 'C')."). This could have led a reasonable employee to conclude that there was some potential for fruitful informal conciliation, so that it was not necessary to commence a legal action.

Moreover, the nature of Plaintiff's work for Defendant changed several times during the period from Plaintiff's injury to his termination, including his reassignment to a new position about 40 days prior to his termination. *See* Rodriguez Decl., Dkt. 62 ¶¶ 50, 63 (reassignment to Sales Associate position beginning January 24, 2015; termination on March 6, 2015); Ex. Z to Haeffele Decl., Dkt. 40-26 (same); Ex. W to Martin Decl., Dkt. 39-23 (same). Plaintiff contends that the tasks assigned to him in his Sales Associate role were very inconsistent with his work restrictions. *See, e.g.*, Rodriguez Decl., Dkt. 62 ¶¶ 53-55. However, he held the Sales Associate position for such a brief period that it is not clear from the record that his assignment to that position and/or the accompanying accommodation issues were permanent before his termination. Rather, this presents issues of fact.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-05219 JAK (RAOx) | | Date | August 1, 2019 |
|---|---|---|---|---|
| Title | Jose Rodriguez v. Wal-Mart Stores, Inc., et al. | | | |

The events underlying Plaintiff's claims were also sufficiently related to one another to present a factual issue as to the applicability of the continuing violation doctrine. This is reinforced by the California Supreme Court's recognition "that similar kinds of unlawful employer conduct, such as acts of harassment or failures to reasonably accommodate disability, may take a number of different forms." *Richards*, 26 Cal. 4th at 823. Plaintiff's reprimands were cumulative, arose from similar circumstances, and triggered his ultimate termination. The alleged failure to accommodate or to engage in the interactive process by Defendant likewise manifested in related ways over the course of Plaintiff's employment, sufficient to render it a continuous course of conduct. That alleged course of conduct did not cease until the end of Plaintiff's employment. The same holds for the smaller, but persistent, slights Plaintiff contends he experienced on a regular, ongoing basis related to his disability.

For the foregoing reasons, the Jurisdictional Motion is **DENIED.**

      C.      Motion for Sanctions

            1.      <u>Legal Standards</u>

A party may move for sanctions pursuant to Fed. R. Civ. P. 11(c), where another party has engaged in inappropriate litigation conduct. The Ninth Circuit has identified two situations in which Rule 11 sanctions may be appropriate: (i) "where a litigant makes a 'frivolous filing,' that is, where he files a pleading or other paper which no competent attorney would believe was well grounded in fact and warranted by law; and (ii) where a litigant files a pleading or paper for an 'improper purpose,' such as personal or economic harassment." *Greenberg v. Sala*, 822 F.2d 882, 885 (9th Cir.1987) (internal citations omitted). Frivolous filings are those that are both "[(1)] baseless and [(2)] made without a reasonable and competent inquiry." *Montrose Chem. Corp. v. Am. Motorists Ins. Co.*, 117 F.3d 1128, 1133 (9th Cir. 1997) (internal quotation marks and citation omitted).

"Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir.1988). "Courts must 'avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading . . . was submitted.'" *Id.* at 1344 (citing *Hudson v. Moore Business Forms, Inc.*, 827 F.2d 450, 453-55 (9th Cir.1987)).

            2.      <u>Application</u>

Plaintiff contends that the Jurisdictional Motion was improper in that it was not justified by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. Plaintiff argues that the Jurisdictional Motion was sufficiently egregious to warrant the imposition of sanctions. He seeks an award of $15,775 in attorney's fees and costs, which reflect those incurred in opposing the Jurisdictional Motion. Defendant asserts that its legal arguments have merit, but even if they are unsuccessful, presenting them did not constitute sanctionable conduct.

Defendant's position is more persuasive. As noted, the law is unsettled as to the jurisdictional implications of failure to exhaust pursuant to the FEHA. Moreover, the failure to apply the proper rule of procedure to a motion does not merit sanctions, particularly where the Federal Rules specifically provide a means to evaluate a motion for judgment on the pleadings that relies on some evidence that is not part

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-05219 JAK (RAOx) | | Date | August 1, 2019 |
|---|---|---|---|---|
| Title | Jose Rodriguez v. Wal-Mart Stores, Inc., et al. | | | |

of the complaint. Similarly, the untimely filing of a motion does not warrant sanctions, where, as here, the motion could not have been brought timely given its factual premise. Defendant has not presented frivolous arguments. Therefore, there is no basis to impose the "extraordinary remedy" of sanctions. Accordingly, the Motion for Sanctions is **DENIED.**

IV.    <u>Conclusion</u>

For the reasons stated in this Order, the Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**. Summary judgment is granted for Wal-Mart as to the retaliation claim. It is denied as to all other claims.

Plaintiff's request to file an untimely opposition to the Motion for Summary Judgment is **GRANTED**, and the Jurisdictional Motion and the Motion for Sanctions are **DENIED.**


**IT IS SO ORDERED.**


_____ :  _____

Initials of Preparer   ak